**CROSNER LEGAL, P.C.**
Michael T. Houchin (SBN 305541)
Ryan Tack-Hooper (WA SBN 5642)
*pro hac vice forthcoming*
Zachary M. Crosner (SBN 272295)
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-763
Fax: (310) 510-6429
mhouchin@crosnerlegal.com
ryan@crosnerlegal.com
zach@crosnerlegal.com

Attorneys for Plaintiff
DANIEL HERRERA

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL HERRERA individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> REEDS, INC., a Delaware Corporation, <br><br> Defendant. | Case No.: **'26 CV 0756 RSH JLB** <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

Plaintiff Daniel Herrera individually, and on behalf of all others similarly situated, and the general public, by and through undersigned counsel, hereby brings this action against Reed's, Inc., and upon information and belief and investigation of counsel, alleges as follows:

## INTRODUCTION

1.     This is a consumer class action for violations of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*, California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and breach of express warranty.

2.     Defendant sells several beverages under its Reed's brand whose front labels state they are "All Natural," made with "Natural Ingredients," and contain "Nothing Artificial." Defendant makes similar representations on its website.

3.     In reality, the beverages contain manufactured citric acid produced through industrial fermentation using *Aspergillus niger*. Natural alternatives exist but are more expensive and necessarily small-scale. Defendant chose the cheaper, mass producible synthetic version, while selling its products at the price premium associated with using natural citric acid.

4.     Defendant's packaging, labeling, and advertising scheme is intended to give consumers the impression that they are buying a premium product that contains only natural ingredients.

5.     Because Reed's products contain a synthetic ingredient, the "All Natural" and "Nothing Artificial" claims are false. Plaintiff relied on these representations when purchasing the Products in California and suffered economic injury. He brings this action individually and on behalf of California consumers to remedy Defendant's unlawful conduct.

## PARTIES

6.     Plaintiff is a California citizen and resident of San Diego, California.

1

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

7.   Defendant Reed's, Inc. is a Delaware corporation with its principal place of business in Connecticut.

## JURISDICTION AND VENUE

8.   This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs.

9.   Defendant is subject to personal jurisdiction in California because it sells, distributes, and advertises the Products throughout the state and has purposefully availed itself of California's consumer market. Plaintiff's claims arise directly from Defendant's California-directed conduct, and it is reasonable to require Defendant to defend a lawsuit based on Products it sold to Plaintiff and other California consumers.

10.   Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Plaintiff purchased the Products within this District.

## FACTUAL ALLEGATIONS

### The Products Claim to Have "Nothing Artificial"

11.   Defendant sells Reed's Real Ginger Ale and Reed's Zero Real Ginger Ale (the "Products").

12.   The front labels of the Products prominently state "All Natural" or "Natural Ingredients," and the cartons prominently state "Nothing Artificial."

13.   These statements convey that the Products contain only natural ingredients and no artificial components.

### Defendant Uses Citric Acid Manufactured from Aspergillus niger

14.   The Products contain citric acid.

2

CROSNER LEGAL, P.C.

15.    The citric acid Defendant uses is produced through industrial fermentation using engineered strains of a mold called *Aspergillus niger* and then extracted through chemical processing involving solvents, acids, and other synthetic inputs.

16.    Traditional extraction of citric acid from fruit juices is not available at the scale of Defendant's commercial operations. *See* Exhibit B.

17.    Instead, approximately 99% of the world's commercial production of citric acid is carried out using the fungus *Aspergillus niger* and synthetic solvents. *See* Exhibit A.

18.    Defendant's use of manufactured citric acid is further confirmed by the fact that it has previously been sued for using manufactured citric acid and has not previously sought to dismiss suits on the basis that this allegation is incorrect.

### *Citric Acid Manufactured from Aspergillus niger is artificial*

19.    Regulatory authorities, including the USDA and FDA, have long recognized that citric acid manufactured using *Aspergillus niger* is synthetic, man-made, and non-natural ingredient. *See* Exhibit B.

20.    When asked "Is this substance Natural or Synthetic?" United States Department of Agriculture Marketing Services reviewers state: "synthetic." *See* Exhibit B.

21.    Manufactured citric acid is meaningfully different from naturally produced citric acid.

22.    Manufactured citric acid can contain residues of the synthetic chemicals used to produce it, including synthetic isoparaffinic petroleum hydrocarbons. *See* Exhibit A.

23.    Additionally, "the potential presence of impurities or fragments from the *Aspergillus niger* in [manufactured citric acid] is a significant difference that may trigger deleterious effects when ingested." *See* Exhibit A.

3
CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

24. The FDA has determined that manufactured citric acid is artificial. The FDA has sent warning letters to companies stating that certain products labeled as "natural" are misbranded because they contain citric acid as an ingredient. *See* Exhibit C & D.

25. Defendant has previously faced consumer complaints challenging these same labeling practices and has long been aware that manufactured citric acid is considered by regulatory authorities and the general public to be synthetic.

***Reasonable Consumers and Misled into Purchasing Reed's Products***

26. Defendant's packaging, labeling, and advertising scheme is intended to give consumers the impression they are buying a premium product that is free from artificial ingredients, including artificial preservatives.

27. Defendant uses the All Natural / Natural Ingredients and No Artificial branding strategies and labeling as the primary feature differentiating its Products from other ginger ale products in the marketplace.

28. Reasonable consumers widely understand and value claims such as "natural," "free from artificial ingredients," and "nothing artificial."

29. Large majorities of American consumers say they seek out more natural or less processed foods.

30. Shoppers pay a premium for products they believe to contain only natural ingredients.

31. Of course, the market for "All Natural" foods with "Nothing Artificial"—created by consumer concerns about the health and environmental consequences of artificial manufacturing techniques—is precisely why Reed's marketing strategy centers these claims.

32. Exploiting this consumer desire for "All Natural" beverages, Defendant's Products are sold at a premium compared to similar products not labeled as being "All Natural" or made with "Natural Ingredients" and as containing "Nothing Artificial."

4

CROSNER LEGAL, P.C.

33.    For example, as of July 2025, Walmart sold an eight-pack of 12 fluid ounces of Reed's Real Ginger Ale Original for $24.93 (26 cents / fl. oz). By comparison, Walmart sells a 12 pack of 12 fluid ounces of Canada Dry Ginger Ale for $7.92 (5.5 cents / fl. oz). The Canada Dry product does not claim to be made with natural ingredients or to contain nothing artificial. There is a similar substantial price differential with Defendant's other Products.

34.    As recently as February 2025, Plaintiff purchased the Products in San Diego, at a Food Bowl Market and Barons Market, after seeing and relying on the "All Natural," "Natural Ingredients," and "Nothing Artificial" statements on the can and carton.

35.    As the USDA put it, "[n]umerous consumer food choice studies have concluded that the 'natural' label on food is often equated with healthier food choices and more costly production practices that signify environmental stewardship" and "[t]he economic problem raised by natural labels is that consumers could be paying extra for product attributes they are not receiving while producers of products with those attributes lose sales." *See* Kuchler, Fred, et al., The Prevalence of the "Natural" Claim on Food Product Packaging (Report No. EB-35), USDA Economic Research Service (May 9, 2023), *available at* https://www.ers.usda.gov/publications/pub-details?pubid=106478.

36.    Plaintiff would not have purchased the Products, or would have paid less, had he known they contained a synthetic preservative like manufactured citric acid.

37.    Plaintiff (like other class members, most likely) wishes to rely on Reed's labeling in the future but cannot do so unless Defendant stops this deceptive practice. He therefore faces an ongoing risk of future harm each time he encounters the Products for sale.

5
CLASS ACTION COMPLAINT

38. Accordingly, injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair conduct described herein and to prevent future harm.

## CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action as a class action pursuant to Cal. Code. Civ. Proc. § 382 and Cal. Civ. Code § 1781 on behalf of the following Class:

All persons who purchased one or more of the Products for personal use in California within the applicable statute of limitations until the date class notice is disseminated.

40. Excluded from the Class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case; (iv) individuals who received a full refund of the Products from Defendant.

41. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

42. The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

43. Numerosity: Class members are so numerous that joinder of all members is impracticable. Given the nature of the Products and the breadth of Defendant's reach, Plaintiff believes there are thousands of consumers who are Class members described above who have been damaged by Defendant's deceptive and misleading practices. For instance, according to Defendant, the Reed's Inc. portfolio is sold in over 35,000 retail stores nationwide.

6

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

44. Commonality and Predominance: There is a well-defined community of interest in the common questions of law and fact affecting all Class members. The questions of law and fact common to the Class members which predominate over any questions which may affect individual Class members include, but are not limited to:

a. Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b. Whether Defendant's misconduct set forth in this complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

c. Whether Defendant made misrepresentations concerning the Products that were likely to deceive the public;

d. Whether the representations that the Products are "All Natural" or made with "Natural Ingredients" and with "Nothing Artificial" are false or misleading;

e. Whether Plaintiff and the Class are entitled to injunctive relief;

f. Whether Plaintiff and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class members.

45. Typicality: Plaintiff is a member of the Class he seeks to represent. Plaintiff's claims are typical of the claims of each Class member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased one or more of the Products. Plaintiff is entitled to relief under the same causes of action as Class members.

46. Adequacy of Representation: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class members Plaintiff seeks to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating the rights of the Class; Plaintiff has retained counsel competent and experienced

7

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class members. The prosecution of separate actions by individual Class members would create a risk of inconsistent and varying adjudications.

47.     Superiority: A class action is the superior method for adjudicating this dispute because individual claims are too small to justify separate suits, and joinder of hundreds of purchasers would be impracticable and inefficient. Resolving Defendant's uniform course of conduct in one proceeding will avoid repetitive litigation, ensure consistent results, and permit the Court to administer any relief in a far more streamlined and cost-effective manner than would be possible through individual actions. No manageability issues are anticipated that would preclude class treatment.

48.     Final Declaratory or Injunctive Relief: Additionally, or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

## FIRST CLAIM FOR RELIEF

### Violation of California's Consumers Legal Remedies Act

### Cal. Civ. Code §§ 1750, *et seq.*

49.     Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

50.     Plaintiff and Class members are "consumers," the Products are "goods," and their purchases were "transactions" under the CLRA.

8

CLASS ACTION COMPLAINT

51.   Defendant violated Civil Code §1770(a)(5), (7), (9), and (16) by representing that the Products were "All Natural," contained "Natural Ingredients," and had "Nothing Artificial" when in fact they contain manufactured citric acid, a synthetic ingredient and artificial preservative.

52.   These misrepresentations and omissions were material, and Plaintiff and Class members relied on them when purchasing the Products.

53.   Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein.

54.   Pursuant to California Civil Code section 1782, on or about July 30, 2025, Plaintiff notified Defendant, in writing, by certified mail, of the alleged violations of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act. Defendant has not rectified or agreed to rectify the problems associated with the actions detailed herein and give notice to all affected consumers within 30 days of the date of written notice pursuant to section 1782 of the CLRA. Thus, Plaintiff seeks actual damages, punitive damages, injunctive relief, and attorneys' fees and costs for Defendant's violations of the CLRA.

55.   Pursuant to section 1780(d) of the CLRA, below is an affidavit showing that this action was commenced in a proper forum.

### SECOND CLAIM FOR RELIEF

**Violation of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

56.   Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

57.   Defendant's conduct violates the UCL under each prong.

CROSNER LEGAL, P.C.

9

58. The conduct is unlawful because Defendant's misrepresentations and omissions violate the CLRA and constitute false advertising and breaches of warranty.

59. The conduct is unfair because Defendant's misleading "natural" marketing confers no countervailing benefit, harms consumers who pay a price premium, and provides Defendant an unjust competitive advantage.

60. The conduct is fraudulent because the "All Natural," "Natural Ingredients," and "Nothing Artificial" claims are likely to deceive reasonable consumers.

61. Plaintiff and Class members paid money they otherwise would not have paid and thus suffered economic injury.

62. Plaintiff and the Class seek restitution, injunctive relief, and all other relief authorized by §17203.The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

### THIRD CLAIM FOR RELIEF

### Breach of Express Warranty Under California Law

63. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

64. Defendant expressly warranted on the Products' labeling and marketing that the Products are "All Natural," contain "Natural Ingredients," and contain "Nothing Artificial."

65. These affirmations formed part of the basis of the bargain.

66. The Products do not conform to the warranty because they contain manufactured citric acid, a synthetic and artificial ingredient.

67. Plaintiff and Class members relied on Defendant's representations and would not have purchased the Products, or would have paid less, had the Products been labeled truthfully.

10

CLASS ACTION COMPLAINT

68.     Defendant's breach caused economic injury, entitling Plaintiff and Class members to damages, restitution, and other available relief.

### REQUEST FOR RELIEF

Plaintiff, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

a.     Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

b.     Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c.     Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d.     Ordering damages in an amount which is different than that calculated for restitution for Plaintiff and the Class;

e.     Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

f.     Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g.     Ordering such other and further relief as may be just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury of all claims in this complaint so triable.

Dated: February 6, 2026                    CROSNER LEGAL, P.C.

                                           By:      /s/ Michael T. Houchin
                                                    Michael T. Houchin

CROSNER LEGAL, P.C.

11

CLASS ACTION COMPLAINT

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

*Attorneys for Plaintiff and the Proposed Class*

12

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

## Civil Code Section 1780(d) Affidavit

I am an attorney duly licensed to practice before all courts of the State of California. I am one of the counsel of record for Plaintiff. This declaration is made pursuant to California Civil Code section 1780(d) of the California Consumers Legal Remedies Act. Defendant has done, and is doing, business in California, including in this County. Plaintiff Daniel Herrera purchased the Product at issue in this County.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed February 6, 2026 at San Diego, California.

CROSNER LEGAL, P.C.

By:      *Michael T. Houchin*
         MICHAEL T. HOUCHIN

CLASS ACTION COMPLAINT