GRAVITAS LAW GROUP APC
David J. Scharf (SBN 170083)
Admission Pending
620 Newport Center Dr. Suite 1100
Newport Beach, CA 92660
(714) 975-8281 Office
(714) 441-5827 Fax
Attorneys for Defendant
REED'S INC.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL HERRERA, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> REED'S, INC., a Delaware corporation, <br><br> Defendant. | Case No. 3:26-cv-00756-RSH-JLB <br> Hon. Robert S. Huie <br><br> DEFENDANT REED'S, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS <br><br> Motion Date: April 22, 2026 <br> Per Chambers Rules, No Oral Argument Unless Separately Ordered By The Court |

## I. INTRODUCTION

Plaintiff's theory is straightforward but legally insufficient: Reed's labels certain beverages as "All Natural," "Natural Ingredients," and "Nothing Artificial"; the beverages contain citric acid; most commercial citric acid is allegedly produced through fermentation using Aspergillus niger; therefore, the labels must be false. That chain of reasoning fails at every step. The Complaint does not plead product-specific facts showing that the citric acid in the Reed's products Plaintiff purchased is artificial, chemically different from naturally occurring citric acid, or inconsistent with how reasonable

1

consumers understand natural-product labeling. Instead, it pleads industry generalities, cites secondary materials, and asks the Court to infer falsity from common manufacturing practices alone. Under Rule 12(b)(6), that is not enough.

Ninth Circuit law permits dismissal where context and common sense make the pleaded deception theory implausible. See *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228–29 (9th Cir. 2019); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965–66 (9th Cir. 2016). And the courts that have addressed materially similar citric-acid and processing-method theories—including *Karabas v. TC Heartland LLC*, 2025 WL 777001 (E.D.N.Y. Mar. 11, 2025), *Valencia v. Snapple Beverage Corp.*, 2024 WL 1158476 (S.D.N.Y. Mar. 18, 2024), and *Tarzian v. Kraft Heinz Foods Co.*, 2019 WL 5064732 (N.D. Ill. Oct. 9, 2019)—have rejected them for the same reason: allegations about how an ingredient is commonly made do not plausibly establish that the ingredient in the challenged product is artificial or that reasonable consumers would deem it so.

The Complaint is further undercut by the very government materials on which Plaintiff attempts to rely. USDA guidance classifies citric acid produced by "microbial fermentation of carbohydrate substances" as "nonsynthetic," and the USDA's National List expressly permits citric acid produced by microbial fermentation in processed products labeled "organic" or "made with organic." FDA, for its part, has repeatedly said it has not adopted a formal definition of "natural" and that its informal policy is not intended to address food production methods. Those authorities do not support Plaintiff's theory; they defeat it. The Complaint should therefore be dismissed, with prejudice if the Court concludes amendment would merely repeat the same defective theory.

**II. RELEVANT ALLEGATIONS**

Plaintiff alleges that he purchased Reed's Real Ginger Ale and Reed's Zero Real Ginger Ale in San Diego in February 2025 after seeing "All Natural," "Natural Ingredients," and "Nothing Artificial" statements on the can and carton. Compl. ¶¶ 11–12, 34. He further alleges that the products contain

2

citric acid and that commercially available citric acid is generally made through fermentation using Aspergillus niger and subsequent recovery or purification steps. *Id.* ¶¶ 14–25.

But the Complaint does not allege product testing, supplier records, manufacturing specifications, laboratory analysis, or any other nonconclusory product-specific facts showing that the citric acid in the Reed's products Plaintiff bought was artificial, chemically altered in a way material to consumers, or contaminated by processing aids or residual synthetic substances. Nor does the Complaint plausibly allege that the labels on the Reed's products conveyed the specialized and absolute meaning Plaintiff assigns to them. Instead, the pleading relies on generalized claims about the citric-acid industry and prior lawsuits, then leaps to the conclusion that Reed's labels are false. *Id.* ¶¶ 15–25.

### III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must contain enough factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts need not accept legal conclusions, unwarranted deductions, or conclusory allegations cast as facts. Id. at 678–79.

In California consumer-labeling cases, the question is whether a significant portion of reasonable consumers, acting reasonably in the circumstances, would likely be misled. *Becerra*, 945 F.3d at 1228–29. Although that inquiry is often fact intensive, dismissal is proper where the challenged theory is implausible as a matter of law when the label is considered in context and against common sense. *Ebner,* 838 F.3d at 965–66; *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097–98 (9th Cir. 2023). Claims sounding in fraud, including CLRA and fraudulent-prong UCL claims, also must satisfy Rule 9(b). See *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009).

### IV. ARGUMENT

**A. The Complaint Does Not Plausibly Allege Actionable Falsity or Likely Deception.**

The Complaint's core defect is its failure to bridge the gap between generalized allegations about industrial citric-acid production and the specific product Plaintiff purchased. That pleading defect alone warrants dismissal.

**1. General allegations about how citric acid is often made do not plausibly show that the citric acid in Reed's products is artificial.**

*Tarzian* dismissed a materially similar complaint because allegations describing common industry practice did not plausibly connect that practice to the citric acid actually used in Capri Sun. 2019 WL 5064732, at *11. *Valencia* reached the same conclusion, holding that a bare allegation that citric acid "today is made from mold rather than citrus fruit" did not adequately plead that the citric acid in the challenged Snapple products was artificial. 2024 WL 1158476, at *5. The court emphasized that generalized assertions about the industry cannot substitute for product-specific allegations. Id.

*Karabas* is even closer. There, the plaintiff claimed that ingredients derived from plants became synthetic because the production processes were industrial and did not occur in nature. The court rejected that theory, explaining that generalized allegations about production methods do not establish that the resulting ingredient is synthetic, particularly where the complaint does not plausibly allege that synthetic substances remain in the finished product. 2025 WL 777001, at *6–7. That is exactly the problem here.

Plaintiff alleges that citric-acid production may involve solvents, acids, or other processing aids, but he never plausibly alleges that those substances remain in the citric acid in Reed's beverages, that Reed's supplier uses the specific process Plaintiff describes, or that the resulting citric acid is chemically different from citric acid found in citrus and other natural foods. The Complaint asks the Court to infer all of that from common practice alone. Rule 8 and Rule 9(b) do not allow that inferential shortcut.

4

**2. Ninth Circuit law does not treat "natural" as excluding a naturally occurring compound merely because it was produced through industrial fermentation.**

The Ninth Circuit instructs courts to evaluate labeling claims in context and with common sense. *Becerra*, 945 F.3d at 1228–29; *Ebner*, 838 F.3d at 965–66. No reasonable consumer thinks a mass-produced packaged beverage is "natural" only if every ingredient came into existence without any industrial processing whatsoever. See *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) (observing that reasonable consumers know processed foods do not spring fully formed from nature). *Moore v. Trader Joe's Co.*, 4 F.4th 874, 884 (9th Cir. 2021), likewise recognizes that consumers of specialty products bring context and ordinary marketplace knowledge to the label.

Valencia framed the point well in the citric-acid setting: "[a] reasonable consumer would not think that a compound found in nature is artificial even if it is produced in a different way than nature produces it," absent plausible allegations that the resulting citric acid contains synthetic agents or is materially different from natural citric acid. 2024 WL 1158476, at *6. The Complaint here contains no such plausible allegations.

Plaintiff's theory is thus not a reasonable-consumer theory at all. It is a litigation-defined theory under which "natural" means "not produced through an industrial process different from the way nature produces the same compound." That is not the standard California law applies. See *Becerra*, 945 F.3d at 1228–29.

**3. The government materials properly subject to judicial notice refute, rather than support, Plaintiff's theory.**

USDA's National Organic Program guidance defines a "nonsynthetic (natural)" substance as one derived from mineral, plant, or animal matter that does not undergo a synthetic process, and Table 1 specifically classifies "[c]itric acid" as "Nonsynthetic" where it is created by a "naturally occurring biological process (microbial fermentation of carbohydrate substances)." See NOP 5033-1 at 2–3,

5

Table 1. The USDA's National List likewise includes "[c]itric—produced by microbial fermentation of carbohydrate substances" among nonsynthetic substances allowed in processed products labeled "organic" or "made with organic." 7 C.F.R. § 205.605(a).

FDA has not adopted a formal regulatory definition of "natural." In its 2015 notice seeking comments, FDA reiterated that its informal policy is not intended to address food production methods. Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments, 80 Fed. Reg. 69,905, 69,906 (Nov. 12, 2015). Thus, even under the federal materials Plaintiff invokes, the mere fact that a naturally occurring compound is produced by microbial fermentation does not make a natural-label claim false.

At a minimum, these judicially noticeable materials make Plaintiff's contrary reading implausible. See *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (official government materials subject to judicial notice); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–99 (9th Cir. 2018) (same general principles).

**4. The Complaint does not satisfy Rule 9(b).**

The CLRA and UCL fraud-based theories sound in fraud and must state the who, what, when, where, and how of the alleged misconduct. *Kearns*, 567 F.3d at 1124–25. Even accepting that Plaintiff identifies the products and the statements he saw, the Complaint still does not plead the "how" in a plausible, product-specific way. It does not explain how Reed's citric acid is artificial as used in the challenged beverages beyond generalized conclusions about the industry, and it does not identify a nonconclusory basis for asserting that the finished ingredient in Reed's products differs from natural citric acid in a consumer-relevant way. That is insufficient under Rule 9(b).

**B. The CLRA and UCL Claims Fail Because the Complaint Does Not Plausibly Plead Deception, Reliance, or Entitlement to Prospective Relief.**

Because Plaintiff's deception theory fails, the CLRA and UCL claims fail with it. See *Becerra*, 945 F.3d at 1228–29. The same is true of Plaintiff's reliance and price-premium allegations. His

comparator—a mainstream Canada Dry product sold at Walmart—is not plausibly comparable to Reed's premium ginger beverages for purposes of isolating any price effect attributable to the challenged label. Compl. ¶ 33. Differences in formulation, brand positioning, packaging, and product niche break the causal chain. *Karabas* likewise rejected a price-premium theory where the complaint failed to identify a truly comparable product satisfying the plaintiff's preferred definition. 2025 WL 777001, at *8–10.

To the extent Plaintiff seeks prospective injunctive relief, the Complaint also fails to allege a concrete real-world threat sufficient for Article III. A bare assertion that Plaintiff would like to rely on the labels in the future, without a concrete intention to purchase the same products under circumstances creating a real and immediate risk of repeated harm, does not plausibly establish standing. See *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018) (requiring a real and immediate threat of repeated injury). At minimum, the conclusory allegation in paragraph 37 should not preserve injunctive relief if the substantive deception theory is dismissed.

**C. The Express-Warranty Claim Fails Because Plaintiff Does Not Plausibly Allege Nonconformity.**

An express-warranty claim requires a false affirmation of fact that became part of the basis of the bargain and with which the goods failed to conform. Cal. Com. Code § 2313. Here, Plaintiff has not plausibly alleged falsity. Because the Complaint fails to state a plausible deception theory, it necessarily fails to allege that the Reed's products did not conform to the challenged statements under an objective reasonable-consumer standard. See, e.g., *Astiana v. Hain Celestial Grp., Inc.*, 783 F. App'x 697, 699 (9th Cir. 2019) (affirming dismissal of warranty claim that rose and fell with the challenged-label theory).

**D. In the Alternative, the Claims Are Impliedly Preempted to the Extent Plaintiff Seeks To Impose a State-Law Rule Inconsistent with the Federal Labeling Framework.**

Although Reed's principal argument is that the Complaint fails on its own terms, the Court should also dismiss to the extent Plaintiff's theory amounts to a categorical state-law prohibition on

"natural" labeling whenever a product contains citric acid produced by microbial fermentation. USDA has said the opposite in the organic-labeling context, and FDA has specifically declined to define "natural" by reference to food production methods. A state-law rule overriding those federal choices would stand as an obstacle to the federal scheme. See *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 873–74, 881 (2000); *Cohen v. Apple Inc.*, 46 F.4th 1012, 1028–31 (9th Cir. 2022) (recognizing obstacle preemption principles).

**V. CONCLUSION**

For all of these reasons, Reed's respectfully requests that the Court dismiss the Complaint in its entirety. At minimum, the Court should dismiss the claims for injunctive relief and express warranty. Because Plaintiff's theory depends on a legal premise contradicted by governing reasonable-consumer principles and the government materials of which the Court may take judicial notice, dismissal should be with prejudice.

Dated:  March 18, 2026          **GRAVITAS LAW GROUP**

By: _____

David Scharf
Attorneys for Defendant REED'S, INC.

8