UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL HERRERA, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>v.<br>REED'S, INC.,<br>Defendant. | Case No.: 26-cv-756-RSH-JLB<br>**ORDER ON DEFENDANT'S MOTION TO DISMISS**<br>[ECF No. 10] |

Before the Court is a motion to dismiss plaintiff Daniel Herrera's Complaint, filed by defendant Reed's, Inc. ECF No. 10. Pursuant to Local Civil Rule 7.1(d)(1), the Court finds the motion presented appropriate for resolution without oral argument. For the reasons below, the Court denies the motion.

# I. BACKGROUND

## A. Plaintiff's Allegations

The instant putative class action arises from Defendant's labeling of its Real Ginger Ale and Zero Real Ginger Ale products. Plaintiff's Complaint alleges as follows.

Defendant is a Delaware corporation that sells Real Ginger Ale and Zero Real Ginger Ale (the "Products"). ECF No. 1 at ¶¶ 7, 11. The Products bear the statements "All Natural"

or "Natural Ingredients" on their front labels and "Nothing Artificial" on their cartons. *Id.* at ¶ 12. Plaintiff alleges that through these statements, the Products are misleadingly represented to contain "only natural ingredients and no artificial components." *Id.* at ¶ 13.

At issue in this case is the source of the citric acid Defendant uses in its Products. Plaintiff alleges this citric acid is produced through an industrial fermentation process using engineered strains of the mold, *Aspergillus niger*, and extracted through chemical processing involving solvents, acids, and other synthetic inputs. *Id.* at ¶ 15. In contrast, citric acid may also be extracted from fruit juices, but this "traditional" method is allegedly unavailable at the scale of Defendant's commercial operations. *Id.* at ¶ 16. Manufactured citric acid allegedly differs from naturally produced citric acid because it can contain residues of the synthetic chemicals used in its production, including isoparaffinic petroleum hydrocarbons. *Id.* at ¶¶ 21–22. Manufactured citric acid may also contain impurities or fragments from *Aspergillus niger*. *Id.* at ¶ 23.

According to the Complaint, the United States Department of Agriculture ("USDA") and the Food and Drug Administration ("FDA") recognize citric acid manufactured using *Aspergillus niger* as synthetic. *Id.* at ¶¶ 19–20. The FDA has also allegedly sent warning letters to companies stating that certain products labeled "natural" are misbranded because they contain citric acid. *Id.* at ¶ 24.

Plaintiff is a San Diego resident. *Id.* at ¶ 6. As recently as February 2025, Plaintiff purchased the Products at Food Bowl Market and Barons Market in San Diego. *Id.* at ¶ 34. Plaintiff alleges that he would not have purchased the Products, or would have paid less, had he known they contained manufactured citric acid. *Id.* at ¶ 36.

**B. Procedural Background**

On February 6, 2026, Plaintiff filed the instant putative class action. ECF No. 1. The Complaint asserts causes of action for: (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and (3) breach of express warranty under California law. *Id.* at ¶¶ 49–68. Plaintiff brings these claims

individually and on behalf of a proposed class consisting of:

> All persons who purchased one or more of the Products for personal use in California within the applicable statute of limitations until the date class notice is disseminated.

*Id.* at ¶ 39.

On March 18, 2026, Defendant moved to dismiss the Complaint. ECF No. 10. Plaintiff filed a response and Defendant filed a reply. ECF Nos. 11, 12.

## II. LEGAL STANDARD

### A. Failure to Plead a Claim Pursuant to Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The plausibility review is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleading facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). A court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

///

### B. Failure to Plead Fraud with Particularity Pursuant to Rule 9(b)

Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Trammell v. KLN Enters., Inc.*, 176 F.4th 629, 632 (9th Cir. 2026) (internal quotation marks omitted); *see Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.") (internal quotation marks omitted).

## III. ANALYSIS

### A. CLRA and UCL (Claims 1 and 2)

Plaintiff's first two causes of action allege violations of the CLRA and UCL, respectively. Both claims are based on Plaintiff's theory that the statements "All Natural," "Natural Ingredients," and "Nothing Artificial" on the Products' labels are likely to deceive reasonable consumers. *See* ECF No. 1 at ¶¶ 51–52, 60.

Defendant moves to dismiss these claims, arguing that the Complaint does not satisfy Rule 9(b)'s particularity requirement and Plaintiff fails to connect his generalized allegations about citric acid production to the citric acid used in the Products. ECF No. 10-1 at 4, 6. Defendant additionally contends that Ninth Circuit precedent and federal agency materials undermine Plaintiff's theory that the challenged representations are misleading. *Id.* at 5–6. Finally, Defendant challenges Plaintiff's price premium allegations and standing to seek injunctive relief. *Id.* at 6–7. The Court addresses these arguments, in turn, below.

#### *1. The CLRA and UCL—Generally*

California's CLRA prohibits specified unfair or deceptive practices in transactions involving goods or services, including misrepresentations concerning a good's "standard, quality, or grade," Cal. Civ. Code § 1770(a)(7), while the UCL proscribes business practices that are "unlawful, unfair or fraudulent," Cal. Bus. & Prof. Code § 17200. "Courts

often analyze these statutes together because they share similar attributes." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014) (collecting cases).

Claims brought under the CLRA and UCL "are governed by the 'reasonable consumer' test." *McGinity v. P&G*, 69 F.4th 1093, 1097 (9th Cir. 2023). The reasonable consumer test "requires more than a mere possibility" that a defendant's labeling "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (Ct. App. 2003)). Rather, a plaintiff must plausibly allege "a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Lavie*, 105 Cal. App. 4th at 508). "Put another way, '[a] representation does not become false and deceptive merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed.'" *Wiliams v. Cove Drinks, Inc.,* No. 26-CV-03374-H-JLB, 2026 WL 2908617, at *2 (S.D. Cal. Sept. 28, 2026) (quoting *Lavie*, 105 Cal. App. 4th at 507). "The touchstone under the 'reasonable consumer' test is whether the product labeling and ads promoting the products have a meaningful capacity to deceive consumers." *McGinity*, 69 F.4th at 1097.

"In general, dismissal for failure to state a claim in this context is 'rare' and California courts have 'recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer.'" *Albrigo v. Chobani, LLC*, No. 3:24-CV-01418-BJC-KSC, 2025 WL 1930007, at *3 (S.D. Cal. July 11, 2025) (quoting *Williams v. Gerber Products Co.*, 552 F.3d 934, 938–939 (9th Cir. 2009)); *Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, No. 18-CV-06664-BLF, 2020 WL 5910071, at *4 (N.D. Cal. Oct. 6, 2020) ("Normally the reasonable consumer question is not resolved at the motion to dismiss stage, but in rare circumstances the Court may determine, as a matter of law, that the alleged violations are simply not plausible.").

### 2. *Failure to Allege Fraud with Particularity*

Defendant contends Plaintiff's CLRA and UCL claims fail to plead the "who, what, when, where, and how" of the alleged misconduct with the particularity required by Rule 9(b). ECF No. 10-1 at 6. Specifically, Defendant argues that the Complaint does not explain "how" the citric acid used in the Products is artificial beyond generalized allegations about industry practices. *Id.*[1]

The Court is not persuaded. Here, the Complaint identifies the "who" (Defendant); the "what" (the representations "All Natural," "Natural Ingredients," and "Nothing Artificial"); the "when" (Plaintiff's purchases as recently as February 2025); and the "where" (Food Bowl Market and Barons Market in San Diego). ECF No. 1 at ¶¶ 11–12, 34. The Complaint also explains "how" the statements are allegedly false—namely, that the Products, contrary to their labeling, contain citric acid created by industrial production, rather than traditional extraction from fruit juices. *Id.* at ¶¶ 15–17. These allegations are sufficient to satisfy Rule 9(b)'s particularity requirement. *See Balser v. Hain Celestial Grp., Inc.,* 640 F. App'x 694, 695–96 (9th Cir. 2016) (finding Rule 9(b) satisfied where plaintiffs alleged that "natural" meant free of synthetic ingredients and that products bearing that label nevertheless contained synthetic ingredients); *Albrigo*, 2025 WL 1930007, at *7 (holding complaint met requirements of Rule 9 "by asserting that [manufactured citric acid] is not a 'natural' ingredient and that reasonable consumers, including Plaintiff, are likely to be deceived by the 'All Natural Ingredients' label"); *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1077–78 (E.D. Cal. 2010) (finding Rule 9(b) satisfied where plaintiffs identified the challenged "All Natural" labels

---

[1] There is no dispute that Plaintiff's CLRA and UCL claims sound in fraud, thereby requiring Plaintiff to satisfy the heightened pleading standard of Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL.").

and alleged that they were misleading because the drinks contained high fructose corn syrup, which plaintiffs asserted was not natural).

***3. Connection to the Products***

Defendant next argues that the Complaint's generalized allegations do not plausibly establish that the Products contain citric acid produced using *Aspergillus niger*. ECF No. 10-1 at 4.

The Court does not agree. Here, the Complaint specifically alleges that the citric acid Defendant uses is produced through industrial fermentation using *Aspergillus niger* and subsequent chemical processing. ECF No. 1 at ¶ 15. The Complaint further alleges that traditional extraction from fruit juices is unavailable at the scale of Defendant's operations and that approximately 99% of commercial citric acid production is carried out using *Aspergillus niger* and synthetic chemicals. *Id.* at ¶¶ 16–17. The Complaint supports the latter allegation by citing an article that states that "[a]pproximately 99% of the world production of [manufactured citric acid] is through microbial processes using predominantly a mutant strain of the black mold *Aspergillus niger*." *See* ECF Nos. 1 at ¶ 17; 1-2 at 2.

Taken together, these allegations are sufficient to permit a reasonable inference, at the pleading stage, that the citric acid used in the Products is produced through the alleged industrial fermentation process.. *See Ringler v. J.M. Smucker Co.*, 783 F. Supp. 3d 1229, 1238–39 (C.D. Cal. 2025) (finding allegations of *Aspergillus niger* fermentation and chemical extraction, together with scientific literature and the alleged commercial infeasibility of fruit extraction, sufficient to connect the alleged process to the products); *Carbine v. Target Corp.*, No. CV 24-03721-MWF (AJRx), 2025 WL 501829, at *3 (C.D. Cal. Feb. 13, 2025) (finding allegations that approximately 99% of commercial citric acid is produced using *Aspergillus niger* and that the citric acid used in the products was chemically processed sufficient to link the alleged process to the products); *Squeo v. Campbell Soup Co.*, No. 24-CV-02235-SVK, 2024 WL 4557680, at *4 (N.D. Cal. Oct. 22, 2024) (finding allegations concerning the prevalence of manufactured citric acid and the

commercial infeasibility of fruit extraction sufficient to support a reasonable inference that the products contained manufactured citric acid); *Albrigo*, 2025 WL 1930007, at *7 (finding an allegation that the citric acid used in the products at issue was industrially manufactured sufficient to link the alleged ingredient to the products).

***4. Misleading to Reasonable Consumer***

Defendant next argues that the challenged "All Natural," "Natural Ingredients" and "Nothing Artificial" representations would not mislead a reasonable consumer, contending both that Ninth Circuit precedent precludes Plaintiff's claim and that judicially noticeable USDA and FDA materials render Plaintiff's claims implausible. ECF No. 10-1 at 5–6.

The Court is unpersuaded. Defendant relies on three decisions in arguing that Ninth Circuit precedent forecloses Plaintiff's claim: *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225 (9th Cir. 2019); *Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016); and *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021). *Id.* at 5. In *Becerra*, the Ninth Circuit affirmed the district court's dismissal of claims challenging the use of "diet" in Diet Dr Pepper, holding that "no reasonable consumer would assume that Diet Dr Pepper's use of the term 'diet' promises weight loss or management." 945 F.3d at 1229. Rather, "[i]n context, the use of 'diet' in a soft drink's brand name is understood as a relative claim about the calorie content of that soft drink compared to the same brand's 'regular' (full-caloric) option." *Id.*

In *Ebner*, the Ninth Circuit affirmed the dismissal of claims alleging that a lip product's labeling was misleading because its dispenser allowed only 75% of the product to advance past the tube's opening. 838 F.3d at 961. The label accurately disclosed the product's total weight and dispenser tubes using that screw mechanism were commonplace. *Id.* at 965. The Court of Appeals explained: "[t]he reasonable consumer understands the general mechanics of these dispenser tubes and further understands that some product may be left in the tube to anchor the bullet in place." *Id.*

Finally, in *Moore*, the Court of Appeals held that the representation "100% New Zealand Manuka Honey" in Trader Joe's honey products was not misleading to a

reasonable consumer. 4 F.4th at 883–85. The Court of Appeals explained: "given the foraging nature of bees, a reasonable honey consumer would know that it is impossible to produce honey that is derived exclusively from a single floral source." *Id.* at 883. Two additional contextual features reinforced the court's conclusion: the honey's relatively low price and its "10+" on a "Unique Manuka Factor" rating scale indicating it fell lower on the purity scale. *Id.* at 884–85.

While Defendant cites these cases to argue that reasonable consumers interpret product labels in context and with common sense, Defendant does not explain how any of them forecloses Plaintiff's claims. ECF No. 10-1 at 5. Instead, each case turned on materially different considerations: the meaning of "diet" in soft-drink branding, consumers' familiarity with a lip-product dispenser, and the impossibility of obtaining honey exclusively from a single floral source. *See Becerra*, 945 F.3d at 1229; *Ebner*, 838 F.3d at 965; *Moore*, 4 F.4th at 883–85.

Defendant also relies on various USDA and FDA materials to argue that Plaintiff's interpretation of the challenged "All Natural," "Natural Ingredients" and "Nothing Artificial" representations is implausible. ECF No. 10-1 at 5–6. Specifically, Defendant cites a USDA document entitled "Guidance Classification of Materials," which "describes the procedures used to classify materials as synthetic or nonsynthetic . . . under the USDA organic regulations." USDA, *Guidance Classification of Materials* (effective Dec. 2, 2016), ECF No. 10-4 at 1. The guidance offers "[c]itric acid" as an example of a product that is "natural and nonsynthetic" when created by a "naturally occurring biological process, such as fermentation[.]" *Id.* at 4. Defendant also cites 7 C.F.R. § 205.605(a) which lists citric acid "produced by microbial fermentation of carbohydrate substances" as a nonsynthetic substance. ECF No. 10-1 at 6. Finally, Defendant cites a 2015 FDA notice requesting comments on the use of the term "natural" in food labeling. ECF Nos. 10-1 at 6; 10-6. In so doing, Defendant notes the FDA has not adopted a formal regulatory definition of "natural" and that its informal policy concerning that term was "not intended to address food production methods." ECF Nos. 10-1 at 6; 10-6 at 2.

Defendant does not, however, meaningfully connect these materials to how reasonable consumers would understand the challenged representations. The USDA materials concern the classification of substances under the organic-labeling framework. *See* ECF No. 10-4 at 1, 4. But Plaintiff is not challenging the ingredient's eligibility for use in organic-labeled products. Defendant's reliance on the FDA notice suffers from a similar gap: the absence of a formal definition and the agency's informal policy do not establish how reasonable consumers would understand the challenged "All Natural," "Natural Ingredients" and "Nothing Artificial" representations. *See Carbine*, 2025 WL 501829, at *4 (rejecting reliance on FDA and USDA characterizations of citric acid to defeat the plaintiff's reasonable consumer theory).[2]

Rather, multiple courts, including the Ninth Circuit, have recognized that representations similar to the ones alleged here may mislead reasonable consumers into believing that a product contains only natural ingredients. *See Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 533–34 (9th Cir. 2016) (holding that the evidence could support a finding that "All Natural Fruit" labeling was misleading to a reasonable consumer because the products contained synthetic citric and ascorbic acids); *Williams*, 552 F.3d at 939 ("[T]he statement that Fruit Juice Snacks was made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false."); *Albrigo*, 2025 WL

---

[2] Defendant also cites an excerpt from Bruce Alberts et al., *Molecular Biology of the Cell* (4th ed. 2002) to argue that there is no meaningful distinction between fruit-derived and mold-derived citric acid because both are produced through the same "metabolic pathway"—the Krebs cycle. ECF Nos. 12 at 2–3; 12-3 at 3. Even were the Court to take judicial notice of this document and accept this representation, whether reasonable consumers would regard citric acid produced through the alleged industrial process using *Aspergillus niger* as "natural" is a disputed factual question that is not appropriate for resolution at this stage of the case. *See Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (explaining that the reasonable consumer standard "raises questions of fact that are appropriate for resolution on a motion to dismiss only in rare situation[s]") (internal quotation marks omitted).

1930007, at *7 ("Plaintiff has sufficiently pled that the inclusion of stevia extract, monk fruit extract, and [manufactured citric acid] in products labeled 'Only Natural Ingredients' is likely to deceive a reasonable consumer under the UCL and FAL.").[3]

At a minimum, whether reasonable consumers would regard citric acid produced through the alleged process as inconsistent with the challenged representations at issue here presents a fact intensive question not appropriately resolved at this stage of the proceedings. *See Carbine,* 2025 WL 501829, at *5 (holding that whether a reasonable consumer would consider a naturally occurring compound artificial because of its production method was a "fact-intensive determination" inappropriate for resolution at the motion to dismiss stage); *Squeo*, 2024 WL 4557680, at *7 (finding plausible allegation that reasonable consumer could be misled by chips containing the label "No Artificial Colors, Flavors or Preservatives" when they contained artificially produced citric acid, reasoning that "whether a reasonable consumer would be deceived will usually be a question of fact not appropriate for decision on demurrer") (internal quotation marks omitted); *Fried v. Snapple Beverage Corp.*, 753 F. Supp. 3d 1145, 1153 (S.D. Cal. 2024) ("[Q]uestions regarding how consumers interpret terms or phrases on product labels are factual inquiries best suited for resolution at a later stage of the litigation and not on a motion to dismiss.") (internal quotation marks omitted).

---

[3] Although Defendant contends that "Ninth Circuit" law forecloses Plaintiff's theory, Defendant relies centrally on *Valencia v. Snapple Beverage Corp.*, No. 23-CV-1399 (CS), 2024 WL 1158476 (S.D.N.Y. Mar. 18, 2024). ECF No. 10-1 at 5. The Court does not find that decision persuasive on the allegations here. In *Valencia*, the court emphasized that while plaintiff had alleged that citric acid was produced through industrial fermentation, she had not alleged "that the resulting citric acid contains synthetic agents." 2024 WL 1158476, at *6. Here, by contrast, Plaintiff alleges that manufactured citric acid differs from naturally produced citric acid because it can contain residues of synthetic chemicals used in its production and impurities or fragments from *Aspergillus niger*. ECF No. 1 at ¶¶ 21–23; *see Carbine.*, 2025 WL 501829, at *5 ("In contrast to *Valencia*, Plaintiff here *does* contend that the manufactured citric acid contains something synthetic[.]") (emphasis in original).

For these reasons, the Court denies Defendant's motion to dismiss Plaintiff's UCL and CLRA claims on this ground.

### *5. Economic Injury*

Defendant appears to next challenge Plaintiff's price premium allegations. Plaintiff's Complaint alleges that Defendant "exploited" consumer desire for "All Natural" beverages by selling the Products at a premium compared to similar products without the challenged representations—identifying Canada Dry Ginger Ale as an example. ECF No. 1 at ¶¶ 32–33. Defendant responds that Canada Dry Ginger Ale is not a suitable comparator for the Products, which are "premium ginger beverages." ECF No. 10-1 at 6–7.

The Court construes Defendant's argument as a contention Plaintiff has not sufficiently pleaded a plausible economic injury. "Under California law, the economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018); *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020) ("[O]verpayment is a viable theory of economic injury. We have consistently recognized that a plaintiff can satisfy the injury in fact requirement by showing that she paid more for a product than she otherwise would have due to a defendant's false representations about the product.").

Here, Plaintiff alleges that he relied on the "All Natural," "Natural Ingredients" and "Nothing Artificial" representations when purchasing the Products and would not have purchased them, or would have paid less, had he known they contained manufactured citric acid. ECF No. 1 at ¶¶ 34, 36.

Multiple courts have found similar allegations sufficient to plead economic injury—even in the absence of a comparator product. *See Chavez v. Blue Sky Nat. Bev. Co.*, 340 F. App'x 359, 361 (9th Cir. 2009) (finding injury in fact adequately alleged where the plaintiff claimed he purchased beverages in reliance on misrepresentations about their geographic origin and would not have purchased them had he known the truth); *Albrigo*, 2025 WL 1930007, at *11 ("Plaintiff has alleged an injury in fact sufficient to confer standing because she asserts that she overpaid for the Products based on her reliance on a false

representation."); *Grausz v. Hershey Co.*, 691 F. Supp. 3d 1178, 1189 (S.D. Cal. 2023) (finding reliance and resulting economic injury adequately pleaded where the plaintiff alleged she would not have purchased the chocolate products had their labeling disclosed the presence of heavy metals); *Brown v. Starbucks Corp.*, No. 18CV2286 JM (WVG), 2019 WL 4183936, at *4 (S.D. Cal. Sept. 3, 2019) (finding economic injury adequately pleaded where plaintiff alleged that the packaging's omission of an artificial flavor disclosure induced her to pay a price premium and that she would not have had she known gummies products contained artificial flavors).[4]

For these reasons, the Court rejects Defendant's argument Plaintiff must identify a more suitable comparator product to adequately plead economic injury at this stage.

### 6. *Entitlement to Injunctive Relief*

Finally, Defendant argues that Plaintiff's bare assertion that he "wishes to rely" on the Products' labels in the future is insufficient to establish standing to seek prospective injunctive relief. ECF Nos. 1 at ¶ 37; 10-1 at 7.

"A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson*, 889 F.3d at 967. "For injunctive relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

---

[4] Nor does Defendant's reliance on *Karabas v. TC Heartland LLC*, 770 F. Supp. 3d 454 (E.D.N.Y. 2025) establish that a comparator product is required. ECF No. 10-1 at 7. It is true that in *Karabas*, the court held that to plead loss under New Jersey's Consumer Fraud Act, a plaintiff "must specify the price he paid for the product and the price of comparable products." 770 F. Supp. 3d at 469–70. However, Defendant does not explain why this requirement applies to Plaintiff's California claims. Indeed, in a separate section on standing, *Karabas* held that "one method of demonstrating actual injury in the consumable goods context is by showing that the plaintiff paid a 'price premium'" and that a plaintiff was not required to identify "the price of competing products to establish the premium" to demonstrate injury. *Id.* at 465.

In fact, *Davidson*—which Defendant cites—does not actually support Defendant's position. ECF No. 10-1 at 7. In *Davidson*, plaintiff alleged she paid a premium for pre-moistened wipes that were labeled as "flushable" because she believed these wipes were better for the environment and more sanitary than non-flushable wipes. 889 F.3d at 961. The Court of Appeals reversed the district court's dismissal for lack of standing to seek injunctive relief, explaining plaintiff had "properly alleged that she faces a threat of imminent or actual harm by not being able to rely on [defendant]'s labels in the future, and that this harm is sufficient to confer standing to seek injunctive relief." *Id.* at 967. Specifically, *Davidson* held:

> [A] previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an actual and imminent, not conjectural or hypothetical threat of future harm. Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to.

889 F.3d at 969–70 (internal quotation marks and citation omitted).

Here, Plaintiff alleges that he "wishes to rely on Reed's labeling in the future but cannot do so unless Defendant stops this deceptive practice" and that he therefore faces an ongoing risk of harm when he encounters the Products for sale. ECF No. 1 at ¶ 37. Read together with Plaintiff's allegations concerning his prior purchases, there is a reasonable inference that Plaintiff wishes to purchase the Products again but cannot rely on Defendant's labeling in deciding whether to do so.

Under *Davidson*, this is sufficient for Plaintiff to plead standing for injunctive relief. *See* 889 F.3d at 969–70; *see also Falcone v. Nestle USA, Inc.*, No. 24-7707, 2026 WL 74510, at *1 (9th Cir. Jan. 9, 2026) (district court did not err in finding plaintiff had standing to pursue injunctive relief where she testified that she "loves Nestlé products and

that she would like to purchase these products in the future but that she stopped purchasing them when she learned about child labor and environmental damage."); *Cohen v. E. W. Tea Co., LLC*, No. 17-CV-2339-JLS (BLM), 2018 WL 3656112, at *5 (S.D. Cal. Aug. 2, 2018) ("Similar to *Davidson*, Plaintiff adequately alleges she is unable to rely upon Defendant's labeling in the future and will not purchase the Product even though she would like to.").

**B. Express Warranty (Claim 3)**

Defendant separately argues Plaintiff's express warranty claim fails because the Complaint does not plausibly allege that the Products fail to conform to the challenged representations. ECF No. 10-1 at 7.

Under section 2313 of the California Uniform Commercial Code, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313(1)(b). "To prevail on a breach of express warranty claim under California law, a plaintiff must prove that: (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 984 (C.D. Cal. 2015) (internal quotation marks omitted).

Here, Defendant's argument rests on the same asserted failure to plead actionable deception that underlies Defendant's challenge to Plaintiff's CLRA and UCL claims. *See* ECF No. 10-1 at 7 ("Because the Complaint fails to state a plausible deception theory, it necessarily fails to allege that the Reed's products did not conform to the challenged statements under an objective reasonable-consumer standard."). Because the Court has already concluded that Plaintiff has plausibly alleged the challenged representations are misleading, it declines to dismiss Plaintiff's express warranty claim for the same reasons.

**C. Preemption**

Defendant argues, in the alternative, that Plaintiff's claims are barred by "obstacle preemption." ECF No. 10-1 at 7–8. According to Defendant, Plaintiff's claims would

effectively impose a categorical state law prohibition on labeling products containing fermentation-derived citric acid as "natural." *Id.*

### ***1. Preemption—Generally***

The Supremacy Clause provides that federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "Accordingly, [i]f federal law imposes restrictions or confers rights on private actors and a state law confers rights or imposes restrictions that conflict with the federal law, the federal law takes precedence and the state law is preempted." *Conocophillips Alaska, Inc. v. Alaska Oil & Gas Conservation Comm'n*, 177 F.4th 964, 968 (9th Cir. 2026) (internal quotation marks omitted).

"Federal preemption can be either express or implied." *Chicanos Por La Causa, Inc. v. Napolitano*, 558 F.3d 856, 863 (9th Cir. 2009). Express preemption occurs when the language of the statute explicitly states that federal law has a preemptive effect. *See Aguayo v. U.S. Bank*, 653 F.3d 912, 918 (9th Cir. 2011) ("Congress may preempt state law by so stating in express terms."). "But even if no federal statute expressly preempts state law, 'obstacle' preemption means that state law is unenforceable when it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Conocophillips*, 177 F.4th at 968–69.

"The Supreme Court has found obstacle preemption in only a small number of cases of two specific types: those where the federal legislation at issue involved a uniquely federal area[] of regulation and state law directly interfered with the operation of the federal program, and those where a federal enactment clearly struck a particular balance of interests that would be disturbed or impeded by state regulation." *Id.* at 972 (internal quotation marks omitted). "The mere fact that there is tension between federal and state law is not enough to establish obstacle preemption." *Id.* (internal quotation marks omitted).

### ***2. Analysis***

Here, Defendant has not demonstrated that Plaintiff's claims are barred under the doctrine of obstacle preemption. In seeking dismissal on this ground, Defendant relies on

the same USDA and FDA materials discussed above with respect to Defendant's challenge to Plaintiff's CLRA and UCL claims. Specifically, Defendant again cites the USDA's classification of fermentation-derived citric acid as nonsynthetic for organic-labeling purposes and the 2015 FDA notice requesting comments on the use of "natural" in food labeling. ECF No. 10-1 at 5–8

Beyond citing these materials and general obstacle preemption principles, however, Defendant offers only the conclusory assertion that Plaintiff's claims would override "federal choices" and "stand as an obstacle to the federal scheme." *Id.* at 8. As noted above, the USDA materials are directed to the classification of substances as synthetic or nonsynthetic for purposes of the organic-labeling framework. *See* ECF No. 10-4 at 1 ("This guidance describes the procedure used to classify materials as synthetic or nonsynthetic, and as agricultural or nonagricultural, under the USDA organic regulations."); 7 C.F.R. § 205.605 ("The following nonagricultural [substances] may be used as ingredients in or on processed products labeled as 'organic' or 'made with organic (specified ingredients or food group(s))'"). Defendant does not explain why that framework controls whether the Products may be represented as "All Natural," containing "Natural Ingredients," or containing "Nothing Artificial."

Defendant's reliance on the FDA notice is similarly unpersuasive. Again, Defendant does not explain why FDA's statement regarding its informal policy concerning the use of "natural" in food labeling supports the preemption of Plaintiff's claims. Indeed, rather than resolving whether fermentation and other processing methods affect whether a food may be labeled "natural," the notice requests comments on those questions. ECF No. 10-6 at 4 ("Should manufacturing processes be considered in determining when a food can bear the term 'natural?' For example, should food manufacturing processes, such as . . . fermenting . . . be a factor in defining ''natural?' . . . Should the term 'natural' only apply to 'unprocessed' foods? If so, how should 'unprocessed' and 'processed' be defined for purposes of bearing the claim?"). The Court is unpersuaded the FDA notice supports Defendant's obstacle preemption theory. *See Iglesias v. Arizona Beverages USA, LLC*, No.

22-CV-09108-JSW, 2023 WL 4053803, at *2 (N.D. Cal. June 16, 2023) ("Courts in this district have long 'rejected the idea that unfair competition claims based on natural type labels are expressly preempted by FDA regulations.'") (quoting *Pratt v. Whole Foods Mkt. California, Inc.*, No. 5:12-CV-05652-EJD, 2014 WL 1324288, at *6 (N.D. Cal. Mar. 31, 2014)) (collecting cases); *Barnes v. Campbell Soup Co.*, No. C 12-05185 JSW, 2013 WL 5530017, at *7 (N.D. Cal. July 25, 2013) ("Until such time when the FDA issues a explicit position, rule, and requirement regarding the use of the term 'natural,' the Court cannot intrude upon the FDA's authority and unilaterally preempt Plaintiff's claims."); *Hitt v. Arizona Beverage Co., LLC*, No. 08 CV 809 WQH (POR), 2009 WL 449190, at *5 (S.D. Cal. Feb. 4, 2009) ("Plaintiff's All Natural Claims do not stand as an obstacle to accomplishing Congress's objectives of uniformity and consistency in regulating beverage labeling because there are no federal requirements regarding the term 'natural' to be given preemptive effect."); *see also Holk v. Snapple Bev. Corp.*, 575 F.3d 329, 342 (3d Cir. 2009) ("We believe that neither the FDA policy statement regarding the use of the term 'natural' nor the FDA's letter indicating that some forms of [high fructose corn syrup] may be classified as 'natural' have the force of law required to preempt conflicting state law.").

At this stage of the proceedings, Defendant has not shown that this action falls within either of the two narrow categories of cases in which the Supreme Court has found obstacle preemption. The Court therefore declines to dismiss Plaintiff's claims on this ground.[5]

---

[5] The Court grants in part and denies in part Defendant's requests for judicial notice as follows. ECF Nos. 10-2, 12-2. The Court grants the requests concerning the USDA guidance document and Agriculture Handbook No. 98 excerpt, the FDA notice, and the voluntary dismissal with prejudice in *Mason v. Reed's Inc. See United States v. 14.02 Acres of Land More or Less in Fresno County*, 547 F.3d 943, 955 (9th Cir. 2008); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). The Court denies as unnecessary the requests concerning 7 C.F.R. § 205.605(a), the Complaint, the cited judicial decisions, and the *Molecular Biology of the Cell* excerpt. *See Lathan v. Ducart*, No. 16-16551, 2017 WL 3976705, at *1 (9th Cir. June 16, 2017); *Ecological Rts. Found. v. PacifiCorp*, 738 F. Supp. 3d 1239, 1248 (N.D. Cal. 2024). Finally, the Court denies the

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendant's motion to dismiss.

**IT IS SO ORDERED.**

Dated: October 14, 2026

Robert S Huie

Hon. Robert S. Huie
United States District Judge

requests concerning motion papers in *Karabas v. TC Heartland LLC* (E.D.N.Y.)*, Valencia v. Snapple Beverage Corp.* (S.D.N.Y.), *and Tarzian v. Kraft Heinz Foods Co.* (N.D. Ill.). because Defendant did not provide them.